IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TRACY D. FLYNN                                                    PLAINTIFF

V.                              No. 11-3053

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tracy D. Flynn, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

I.      **Procedural Background:**

Plaintiff filed her applications for DIB and SSI on September 17, 2008, alleging an inability to work since September 2, 2007, due to "Back injury I hurt my back and had surgery six years ago. I still have back pain every day. It is a dull ache that I can live with most of the time, but if I am on my feet for over one hour the ache gets worse and I have to sit down and rest. If I try to lift anything where I have to bend over to pick up I get sharp stabbing pains in my lower back that shoot into my left leg. Back slipped disks." (Tr. 8, 148). An administrative hearing was held on April 26, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 49-83). On July 20, 2010, the ALJ issued an unfavorable decision, finding Plaintiff had the

-1-

following severe impairments: status post laminectomy of her lumbar spine and obesity. (Tr. 10). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix II, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally climb ramps and stairs, balance, crouch, crawl, kneel, stoop and push/pull with her bilateral lower extremities. In addition, the claimant is unable to climb ladders, ropes and scaffolds, and she must avoid concentrated exposure to workplace hazards.

(Tr. 14). With the help of a vocational expert (VE), the ALJ found that Plaintiff was unable to perform any past relevant work, but found that there were other jobs that Plaintiff would be able to perform, such as fast food worker, cashier II, and small products assembly. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 3, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 10).

## II.    Evidence Presented:

Plaintiff was born in 1979 and received her GED. (Tr. 143, 152). Plaintiff began having back pain as early as 2002, after she delivered one of her children. (Tr. 283). An MRI of Plaintiff's lumbar spine was performed on August 5, 2002, and revealed a large herniated disc at the L4-L5 level, causing severe central canal stenosis as well as left neural foraminal stenosis. (Tr. 284). On August 27, 2002, Plaintiff underwent back surgery ( microdiskectomy), performed

AO72A
(Rev. 8/82)

by Dr. Ali F. Krisht.  (Tr. 215).  On October 1, 2002, Dr. Krisht reported that Plaintiff had done very well since her surgery, reported improvement except for a mild residual discomfort, which was not bothering her significantly.  (Tr. 214).  She was on no medications for pain.  (Tr. 214).

On April 30, 2003, Plaintiff visited her primary care physician - Dr. Robert L. Kerr - for her obstetric visit and complained of a backache.  (Tr. 282).  On May 8, 2003, Plaintiff gave birth to another child.  (Tr. 336).

The next medical record in the transcript is dated approximately four years later - September 6, 2007 - when Dr. Hassan Najeeb Albataineh performed a General Physical Examination of Plaintiff for the Social Security Administration.  (Tr. 206-212).  Dr. Albataineh reported that Plaintiff was on no medications at that time, but complained of lower back pain and left leg numbness.  (Tr. 206, 208).  He reported no depression, that her gait and coordination and limb function were normal.  He diagnosed Plaintiff with lumbar ruptured disk and lower back pain, and gave Plaintiff no limitations.  (Tr. 208, 212).

Plaintiff's sister, Holly Troxell, wrote a letter dated April 22, 2010, stating that Plaintiff's pain made it hard for her to do daily household chores or a full time job.  (Tr. 203).  Plaintiff's husband, Jason Flynn, also wrote a note, indicating that his wife had a hard time doing everyday tasks such as cleaning and laundry, and that it was not easy for her to stand or sit for extended periods of time.  (Tr. 205).

On November 12, 2008, a General Physical Examination was performed by Dr. Shannon H. Brownfield.  (Tr. 285-292).  Dr. Brownfield diagnosed Plaintiff with lower back pain with upper left extremity radiculopathy; obesity; and mild asthma.  (Tr. 289).  Dr. Brownfield also concluded that Plaintiff had moderate limitation in prolonged positions; moderate limitation in

AO72A
(Rev. 8/82)

lateral lifting and stooping, and moderate to severe ability to lift (not lifting over 50 lbs). (Tr. 289).

On November 17, 2008, non-examining consultant, Dr. Jim Takach, completed a Physical RFC Assessment. (Tr. 283-300). Dr. Takach found that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 294). He also concluded that from the available medical records, Plaintiff retained the ability to function with light work limits through the date last insured to the present. (Tr. 294). Dr. Takach concluded that Plaintiff could occasionally climb ramps/stairs, ladders/ropes/scaffolds; balance; stoop; kneel; crouch; and crawl. (Tr. 295). He also found that no manipulative, visual, communicative limitations were established, and that Plaintiff should avoid concentrated exposure to hazards, (machinery, heights, etc.). (Tr. 296-297).

On January 20, 2009, Dr. Vann Smith, Ph.D., ACFE, ABPS, AAPM, conducted a neuropsychological evaluation. (Tr. 307-309). Dr. Smith diagnosed Plaintiff with: cognitive dysfunction, non-psychotic, mild, chronic, secondary to general medical conditions; degenerative disc disease per patient history (S/P Discectomy, L4-L5); degenerative joint disease, recurrent (weight bearing joints) per patient history; and chronic, non-psychogenic (orthopaedic/neuropathic) pain disorder. (Tr. 309). On that same date, Dr. Smith completed a Mental RFC Questionnaire, where he found Plaintiff was unable to meet competitive standards

-4-

in numerous categories.  (Tr. 312).  Dr. Smith gave Plaintiff the following diagnosis:

| | |
|---|---|
| Axis I: | 294.9 |
| Axis II: | none |
| Axis III: | 1)DDD & 2) DJD 3) chronic pain d/o |
| Axis IV: | Chronic progressive sx |
| Axis V: | Current GAF: 40-45 |
| | Highest GAF Previous - 80 |

(Tr. 310).  Dr. Smith also concluded that Plaintiff's impairments would cause her to be absent

from work more than four days per month.  (Tr. 313).

On November 2, 2009, Dr. Stephen R. Harris, Ph.D., C.E.B.P., psychologist, examined

Plaintiff and noted that at that time Plaintiff was seeing no mental health professional and that

her only medications were over-the-counter Ibuprofen and Excedrin.  (Tr. 315-316).  He noted

that she appeared slightly depressed, and that her overall level of intellectual functioning was in

the average range of intellect (FSIQ - 90).  Dr. Harris diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Pain Disorder, associated with both psychological factors and general medical condition |
| | Adjustment Disorder, with mixed anxiety and depressed mood |
| Axis II: | No diagnosis on Axis II |
| Axis V: | GAF - Current - 64 |

(Tr. 318).

## IV.    Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in failing to find

Plaintiff's Pain Disorder a severe impairment; 2) The ALJ erred in dismissing Dr. Vann Smith's

reasoning and evidence and failed to give them proper weight; 3) The ALJ erred in finding

Plaintiff was not credible; and 4) The ALJ's decision was not supported by substantial evidence.

-5-

(Doc. 9).

### A.    Impairments:

The ALJ found that Plaintiff's mild asthma and cognitive dysfunction were not severe. (Tr. 11). An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § § 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff argues that her perceived pain and frustration causes more than just a slight limitation in Plaintiff's ability to work, and points to Dr. Harris' evaluation in support of her position. Dr. Harris reported that Plaintiff "may have difficulty due to perceived  pain and frustration" in coping with basic work-like tasks, in that she could not perform some tasks physically that she had previously.  (Tr. 319).  He also reported that Plaintiff's ability to concentrate and attend "may be interfered with if she reaches a certain frustration level." (Tr. 319). He concluded that intellectually, Plaintiff could be capable of performing work-like tasks in an acceptable timeframe, but that she may have some difficulties with frustration due to certain physical difficulties if confronted. (Tr. 319). These statements are speculation as to how Plaintiff might react in the future. In addition, Dr. Harris noted that Plaintiff visited with friends and family, took care of her own personal needs, drove and shopped, and that "75%" of the household chores were done by her. (Tr. 318). Further, there is no evidence that Plaintiff's mild

-6-

asthma had more than a minimal effect on Plaintiff's ability to work.

Based upon the foregoing, the undersigned recommends that substantial evidence supports the ALJ's determination that Plaintiff's only severe impairments are status post laminectomy of her lumbar spine and obesity.

**B.  Dr. Vann Smith's Evaluation:**

The ALJ specifically discounted the report of Dr. Vann Smith and his diagnosis of cognitive disorder "as it is not supported by the objective medical evidence or the testimony of the claimant." (Tr. 11).  She noted that Dr. Smith reported a diagnosis of cognitive dysfunction, but reported that the claimant was oriented in all spheres, her memory was mildly impaired, that her judgment and insight were intact, that her affect was muted but flexible, that her mood was mildly dysthymic, that her narratives were marginally fluent but informative, without evidence of associational anomaly, and that her native intelligence was estimated to lie within the normal range.  (Tr. 11, 307-308).  The ALJ also noted that the restrictions identified by Dr. Smith were "extrapolated exclusively from a self-report by the claimant, which is not consistent with her treatment history or reported activities of daily living, a snapshot mental status examination and one set of testing."  (Tr. 11).  The ALJ also noted that only three months prior to seeing Dr. Smith, Plaintiff reported that she could pay attention as long as needed, that she finished what she started and that she followed spoken/written instructions well and handled changes in routine "good."  (Tr. 12, 168).

"A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record.  Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010),

-7-

AO72A
(Rev. 8/82)

quoting from <u>Tilley v</u>. <u>Astrue</u>, 580 F.3d 675, 679 (8th Cir. 2009).  "When a treating physician's opinions 'are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.'" <u>Halverson</u>, 600 F.3d at 930, quoting from <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1023 (8th Cir. 2002).

Courts have affirmed decisions in which one-time examination reports from Dr. Vann Smith were accorded little weight.  <u>See</u> <u>Hudson v. Barnhart</u>, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing psychologists").  In <u>Clement v. Barnhart</u>, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities." <u>Id</u>. at *1. District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Vann Smith's opinions.  <u>See</u> <u>Cole v. Astrue</u>, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(holding that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record);  <u>Partee v. Astrue</u>, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(holding that the ALJ clearly recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith);  <u>Haarstad v. Astrue</u>, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009).  The court in <u>Cole</u> also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." <u>Cole</u>, 2009 WL 3158209 at *8, n.1.  The undersigned is of the opinion that this is exactly what

AO72A
(Rev. 8/82)

the ALJ did in the present case.

The Court believes that the ALJ properly discounted Dr. Smith's findings and gave appropriate weight to the other treating, examining, and non-examining physicians.

### C.    Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in his brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The ALJ considered Plaintiff's daily activities, as set forth above, and the fact that Plaintiff only took over-the-counter medicine for her pain. She also considered the findings of the examining and non-examining physicians. The fact that Dr. Brownfield gave Plaintiff some limitations with respect to being in a position for prolonged periods of time as well as stooping and lifting was taken into consideration in the ALJ's RFC assessment.

Based upon the foregoing, the Court believes Plaintiff's argument is without merit, and

AO72A
(Rev. 8/82)

that there was sufficient evidence for the ALJ to make an informed decision and to support the ALJ's credibility findings.

      **D. Whether Substantial Evidence Supports the ALJ's Findings:**

Plaintiff's argument on this issue is without specificity. Plaintiff merely gives broad general legal principles relating to the fact that substantial evidence must support the ALJ's findings. Plaintiff was not on any prescribed medication, her gait and coordination and limb function were normal, she visited with friends and family, took care of her own personal needs, drove and shopped, and performed 75% of the household chores. In addition, Plaintiff's limitations were provided for in the ALJ's RFC. The Court therefore believes, after reviewing the administrative record and considering the Defendant's well-stated reasons set forth in his brief, that there is substantial evidence to support the ALJ's findings in this matter.

**IV.    Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of the undersigned's report and recommendation in which to file written objections pursuant to 28 U.S.C. §636 (b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of September, 2012.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-10-

AO72A
(Rev. 8/82)